# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY GURLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:18-CV-473-MAB |
| MOHAMMED SIDDIQUI, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Mohammed Siddiqui (Doc. 56). For the reasons set forth below, the motion is granted.

### BACKGROUND

Plaintiff Jeffrey Gurley is an inmate in the Illinois Department of Corrections and currently incarcerated at Graham Correctional Center. On February 13, 2018, he filed a lawsuit pursuant to 42 U.S.C. § 1983 regarding events that occurred at Cook County Jail and Menard Correctional Center (Doc. 1).[1] Plaintiff's claims related to his time at Menard were severed into this separate action (Doc. 1). Plaintiff alleged, in pertinent part, that he fell down a set of stairs at the Cook County Jail in January 2017 and injured his neck and back (Doc. 2; Doc. 9). Later that same year, he was sent to Menard to serve his sentence,

---

[1] The original case is *Gurley v. John Doe 1, et al.*, SDIL case number 18-cv-407-JPG.

and he alleged that the doctor at Menard failed to adequately address his complaints of persistent pain in his neck and back (Doc. 2; Doc. 9). Following a threshold review of the second amended complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment deliberate indifference claim and a state law medical malpractice claim against an unknown doctor (Doc. 9). The doctor was later identified as Dr. Mohammed Siddiqui (Doc. 29).

Dr. Siddiqui filed a motion for summary judgment on August 7, 2019, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 56). Plaintiff filed a response in opposition to the motion (Doc. 60). Dr. Siddiqui did not file a reply brief. The Court set an evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), however, after closer review of the parties' briefs, the Court determined there were no issues of fact and a hearing was not necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). Inmates are required to file a grievance with their counselor within 60 days "after the discovery of the incident, occurrence, or problem that gave rise to the grievance." *Id.* at § 504.810(a). Then, if unsatisfied with the counselor's response, the grievance must be sent to the grievance officer, who submits a

written report of their findings and recommendations to the warden. *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). ILL. ADMIN. CODE, tit. 20, § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final determination of the grievance. *Id.* at § 504.850(d), (e).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

#### FACTUAL BACKGROUND

Plaintiff alleges that Dr. Siddiqui provided him with inadequate medical treatment on four occasions between July 2017 and January 2018 (Doc. 2-1). Specifically, Plaintiff alleges that on July 2, 2017, he filed a written medical request at Menard asking for an extra mattress (Doc. 2-1, p. 50). On August 1, 2017, he requested stronger pain medication (*Id.*). On September 4, 2017, he explained to Dr. Siddiqui that the prescribed medication was ineffective and again requested a more useful medication (*Id.*). Dr. Siddiqui denied his requests for an extra mattress and stronger pain medication, and instead prescribed

six weeks of physical therapy (*Id.* at pp. 50–51). On January 20, 2018, Plaintiff again requested Dr. Siddiqui to provide him with a more useful medication or a medical treatment that would relieve his pain and suffering (*Id.* at p. 51). Plaintiff alleges that Dr. Siddiqui refused to prescribe Plaintiff a different medication, and asked Plaintiff to give the medication he was currently taking some time to work (*Id.*).

Dr. Siddiqui submitted grievance records from the Administrative Review Board (Doc. 57-1). Those records reveal that between July 2017 (the date of the first alleged instance of inadequate medical care) and February 13, 2018 (the date on which Plaintiff filed his lawsuit), Plaintiff submitted three grievances related to his healthcare.

The first grievance is dated September 19, 2017 (Doc. 57-1, pp. 26–30). In this grievance, Plaintiff complains about being charged a $5.00 co-pay for a nurse sick call visit for his back pain, which he views as a chronic condition that should be exempt from the co-pay requirement. Dr. Siddiqui argues that this grievance, while fully exhausted, does not contain any complaints regarding his treatment decisions and is therefore insufficient to exhaust as to him (Doc. 57).

The second grievance is dated October 2, 2017 (Doc. 57-1, pp. 31–34). In this grievance, Plaintiff complains that he was not able to attend physical therapy on September 7th because the facility was on lockdown. Dr. Siddiqui argues that this grievance, while fully exhausted, does not contain any complaints regarding his treatment decisions and is therefore insufficient to exhaust as to him (Doc. 57).

The third grievance is dated January 20, 2018 (Doc. 57-1, pp. 12–17). In this grievance, Plaintiff complains he told the doctor that same day that his pain medication

was ineffective, but the doctor refused to prescribe him "a more useful medication." He asked for a medication or medical treatment that would relieve his pain and suffering. The counselor received the grievance on January 28th and responded on February 21st with a memorandum from the healthcare unit. The memo recounted the medical care Plaintiff received for his back pain from the nurse practitioner and Dr. Siddiqui in January and February 2018 and suggested that Plaintiff's complaints of pain had been properly addressed.

Plaintiff wrote a letter to the ARB on May 18, 2018 regarding his January 20th grievance (Doc. 57-1, pp. 12–17). In the letter, Plaintiff indicated that he was transferred to Mt. Sterling Correctional Center on March 21, 2018. He stated that he received the counselor's response to his January 20th grievance sometime in April 2018 and immediately submitted it to the grievance officer at Mt. Sterling. He received the grievance back on May 18th without any response from the grievance officer. He further indicated that he had been "unable to get the Menard grievance officer to respond back to me." Consequently, he sent the grievance and the counselor's response to the ARB in an attempt to exhaust his administrative remedies. The ARB received Plaintiff's appeal on May 24th and returned it on June 12th without addressing it. The ARB's response instructed Plaintiff that he needed to include his original grievance and responses from the counselor, grievance officer, and warden, and that medical issues are to be reviewed at his current facility prior to review by the ARB.

In his response, Plaintiff does not contest that the September 19, 2017 and October 2, 2017 grievances are insufficient to exhaust as to Dr. Siddiqui (*see* Doc. 60). He only

addresses the January 20th grievance (Doc. 60, p. 1). He claims that he sent this grievance to the grievance officer but "never received a response" (*Id.*).

## DISCUSSION

The Court agrees that the September 19, 2017 and October 2, 2017 grievances are insufficient to exhaust as to Dr. Siddiqui because they do not contain any complaints about the medical treatment he rendered. The grievance dated January 20, 2018 arguably covers Plaintiff's claim against Dr. Siddiqui. However, Plaintiff prematurely filed this lawsuit before allowing the prison a reasonable time to investigate and respond to the grievance. The grievance is dated January 20th, and Plaintiff's counselor received it on January 28th. Plaintiff filed suit on February 13, 2018—only 24 days after he submitted and 16 days after his counselor received the grievance. While the Illinois Administrative Code does not include a suggested timeframe for the counselor to respond to the grievance, *see* ILL. ADMIN. CODE, tit. 20, § 504.810 (2017), the Court is not convinced—and Plaintiff does not argue (*see* Doc. 60)—that 16 days, or even 24 days, is a sufficient amount of time for an inmate to conclude that his attempts to exhaust have been thwarted.[2] That

---

[2] *See Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014) (inmate failed to exhaust where he filed suit only two weeks after submitting his grievance to counselor); *Viverette v. Brooks*, No. 3:15-717-NJR-DGW, 2016 WL 4626191, at *1 (S.D. Ill. Aug. 9, 2016), *report and recommendation adopted*, 2016 WL 4616980 (S.D. Ill. Sept. 6, 2016) (inmate failed to exhaust where he filed suit only nine days after his counselor received the grievance); *Sowemimo v. Bader*, No. CIV. 08-664-JPG, 2010 WL 2803982, at *7 (S.D. Ill. May 11, 2010), *report and recommendation adopted*, 2010 WL 2803980 (S.D. Ill. July 15, 2010) (inmate failed to exhaust where he filed suit 57 days after submitting his grievance to counselor). *But see Meyer v. Wexford Health Sources*, No. 3:16-CV-173-JPG-DGW, 2017 WL 1058831, at *4 (S.D. Ill. Feb. 16, 2017), *report and recommendation adopted*, 2017 WL 1048258 (S.D. Ill. Mar. 20, 2017) (grievance process rendered unavailable when inmate did not receive a response from counselor within 60 days)

is particularly true when the grievance concerns medical issues because the counselor needs time to consult with healthcare providers about the inmate's complaints in order to render an appropriate response. The Court further notes that it is not unreasonable for a counselor at Menard to take longer than 16 or 24 days to respond to a grievance related to medical care. It took the counselor 42 days to respond to the September 19, 2017 grievance (*see* Doc. 57-1, p. 28) and 29 days to respond to the October 2, 2017 grievance (*see* Doc. 57-11, p. 33).

The Court also notes that, according to Plaintiff, he did not receive the counselor's response to the January 20, 2018 grievance until sometime in April 2018, and he never received a response from the grievance officer. Even if the Court assumes this to be true, it need not consider whether the counselor's delay in responding was sufficiently long to warrant a finding that the grievance process was rendered unavailable because Plaintiff had already filed suit long before the point at which a tardy response becomes an unavailable process. The Court likewise need not consider whether the grievance officer's failure to respond rendered the grievance process unavailable because Plaintiff had already filed suit long before he ever sent the grievance to the grievance officer.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Dr. Mohammed Siddiqui (Doc. 56) is **GRANTED**. This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 10, 2020**

<u>s/ Mark A. Beatty</u>  
**MARK A. BEATTY**  
**United States Magistrate Judge**

## NOTICE

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).